Arick Fudali, Esq. (296364)
Alan Goldstein, Esq. (296430)
Mary Fitilchyan, Esq. (342292)
**THE BLOOM FIRM**
26565 Agoura Road, Suite 200
Calabasas, California 91302
Telephone: (818) 914-7320
Facsimile: (818) 884-8079
Email:  arick@thebloomfirm.com
        avi@thebloomfirm.com
        mary@thebloomfirm.com
Attorneys for Plaintiff, Quinn Thyssen

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Quinn Thyssen, an individual, | ) |
| | ) Case No. 2:25-cv-09075 PA-MAR |
| Plaintiffs, | ) |
| | ) **PLAINTIFF'S OPPOSITION TO** |
| vs. | ) **DEFENDANTS' MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| Stryker Corporation, a Michigan | ) |
| company; Stryker Employment | ) Hon. Percy Anderson |
| Company, LLC, a Michigan company; | ) |
| and Does 1-10, inclusive, | ) Date: July 20, 2026 |
| | ) Time: 1:30pm |
| Defendant. | ) Courtroom 9A |
| | ) |
| | ) |

---

Plaintiff's Opposition to Defendants' Motion
for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

I.    INTRODUCTION ...........................................................................1

II.   STATEMENT OF FACTS ..............................................................2

   A. Plaintiff Succeeds as a Sales Representative...............................2

   B. Plaintiff Discloses his Sexual Orientation
      to Norman and to his Team ...........................................................3

   C. Management Blocks Plaintiff's Internal Advancement ................3

   D. Plaintiff Complains of Unlawful Conduct and Defendants Retaliate ...........4

   E. Plaintiff Ultimately Leaves Stryker...............................................4

III.  LEGAL ARGUMENT....................................................................4

   A. Plaintiff Presented Substantial Evidence of Actionable
      Adverse Employment Actions.......................................................4

      1. The 2024 Performance Review Constitutes
         an Adverse Employment Action.............................................6

      2. The Denial of Plaintiff's Internal Transfer Applications
         Constitutes an Adverse Employment Action .........................7

      3. Plaintiff's Resignation was Not Voluntary.............................9

   B. Triable Issues of Fact Preclude Summary
      Judgment on Plaintiff's Discrimination Claim...........................10

      1. Ample Evidence Exists Demonstrating Discriminatory Motive............10

      2. Defendants' Proffered Reasons for its Conduct are Pretextual...............13

   C. Triable Issues of Fact Preclude Summary
      Judgment On Plaintiff's FEHA Retaliation Claim......................16

      1. Plaintiff's February 11 HR Complaint Constituted
         Protected Activity .................................................................16

      2. Following Plaintiff's February 11 Complaint, Defendants
         Escalated Their Performance Management Efforts................16

      3. The Timing and Circumstances of the Adverse Actions

Plaintiff's Opposition to Defendants' Motion          *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                            Case No. 2:25-cv-09075 PA- MAR

i

Create a Strong Inference of Retaliation ...............................................17

D. Triable Issues of Fact Preclude Summary Judgment on Plaintiff's Whistleblower Retaliation Claim ...........................................................19

E. Triable Issues of Fact Preclude Summary Judgment on Plaintiff's FEHA Harassment Claim ................................................................21

F. Plaintiff Withdraws His Failure to Prevent Claim .....................................22

G. Triable Issues of Fact Preclude Summary Judgment on Plaintiff's Constructive Discharge Claim..............................................23

H. Plaintiff's Request for Punitive Damages is Viable ...................................24

IV. CONCLUSION ..........................................................................25

Plaintiff's Opposition to Defendants' Motion         *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                           Case No. 2:25-cv-09075 PA- MAR

ii

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Bruce v. Ylst*
  351 F.3d 1283 (2003)................................................................... 17, 18

*Chambers v. District of Columbia*
  35 F.4th 870 (D.C. Cir. 2022).................................................................7

*Earl v. Nielsen Media Research, Inc.*
  658 F.3d 1108 (9th Cir. 2011) ...............................................................13

*English v. General Dynamics Mission Systems, Inc.*
  808 Fed. Appx. 529 (2020) ....................................................................9

*Gowan v. Stryker Corp.*
  No. 20-cv-00339, 2021 WL 3403150 (N.D. Cal. Aug. 4, 2021)..........................8

*Guz v. Bechtel Nat'l, Inc.*
  24 Cal. 4th 317 (2000) .........................................................................11

*Hill v. Rhude*
  556 F.Supp.3d 1144 (2021)...................................................................17

*Kearney v Salomon Smith Barney, Inc.*
  39 Cal 4th 95 (2006) .............................................................................8

*Lucido v Cravath, Swaine & Moore*
  425 F Supp 123 (1977)...........................................................................7

*McDonnell Douglas Corp. v. Green*
  411 U.S. 792 (1973)........................................................................ 11, 19

*McRae v Dept. of Corrections & Rehabilitation*
  142 Cal App 4th 377 (2006) ....................................................... 5, 10, 12, 16

*Nazir v. United Airlines, Inc.*
  178 Cal. App. 4th 243 (2009) ....................................................... 10, 21, 22

*Quiroz v. Horel*
  85 F.Supp.3d 1115 (2015)...................................................................17

Plaintiff's Opposition to Defendants' Motion          *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                                   Case No. 2:25-cv-09075 PA- MAR

*Ray v. Henderson*
    217 F.3d 1234 (2000)................................................................................5

*Reid v. Google, Inc.*
    50 Cal. 4th 512 (2010) ..................................................................... 10, 11

*Spears v Missouri Dept. of Corrections and Human Resources*
    210 F3d 850 (8th Cir 2000)......................................................................6

*Su v. United States Postal Service*
    733 F.Supp.3d 983 (2024)........................................................................18

*Texas Dep't of Cmty. Affairs v. Burdine*
    450 U.S. 248 (1981)..................................................................................11

*Turner v. Anheuser-Busch, Inc.*
    7 Cal. 4th 1238 (1994) ..............................................................................9

*Watson v. Rozum*
    834 F3d 417 (2016)..................................................................................17

*Yanowitz v. L'Oreal USA, Inc.*
    36 Cal.4th 1028 (2005) ....................................................... 4, 5, 7, 16

**Statutes**

Cal. Gov. Code § 12923 ..................................................................21

Cal. Gov. Code § 12940 ……………………………………………………*passim*

Cal. Lab. Code § 1102.5 …………………………………………..…19, 20

Cal. Lab. Code § 1102.6 …………………………………………..…19, 20

Plaintiff's Opposition to Defendants' Motion          *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                                            Case No. 2:25-cv-09075 PA- MAR

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. <u>INTRODUCTION</u>

Defendants Stryker Corporation and Stryker Employment Company, LLC (collectively, "Defendants") move for summary judgment on the flawed premise that the evidence permits only one conclusion, when the record instead is replete with competing evidence, conflicting testimony, competing inferences, and credibility determinations that only a jury may resolve. Viewed in the light most favorable to Plaintiff Quinn Thyssen, the chronology of events reveals why this case presents numerous genuine disputes of material fact.

From 2021 to 2024, Plaintiff was a successful sales representative for Defendants. Plaintiff earned President's Club recognition in his final full year and excelled in Stryker's clinical certification program.

In the summer of 2023, Plaintiff disclosed to his supervisor, Ryan Norman, that he is gay. After the disclosure, Norman often referred to Plaintiff as "girl" and once referred to him as "the gay guy." During a performance review, in a purported attempt to motivate Plaintiff, Norman told Plaintiff that he did not want to use the expression "put a fire in your ass" because Plaintiff was gay.

In December 2024, Plaintiff applied for several internal transfers in an effort to remain employed at Stryker under a different supervisor. Rather than receiving interviews, management discussed blocking his applications, including manager John Bowenkamp's statement, "No way he will get that job." That same month, Norman began privately emailing himself alleged concerns about Plaintiff – something he had never previously done with Plaintiff or any other employee. On January 15, 2025, Norman directly told Plaintiff to "start looking for another job" because leadership wanted him gone.

---

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

On February 11, 2025, Plaintiff reported Norman's harassment and discrimination to HR. On February 25, 2025, Plaintiff reported what he reasonably believed to be off-label promotion of a Stryker product. On February 28, 2025, Norman issued Plaintiff a sharply negative performance review and simultaneously circulated an unusual email to HR and senior leadership emphasizing Plaintiff's alleged deficiencies. Norman handled no other employee's reviews this way. By early March, Stryker succeeded in forcing Plaintiff's resignation.

This case presents many credibility disputes, competing inferences, questions of motive and questions of malice that are reserved for the jury. Despite Norman's and Bowenkamp's inability to produce a single text message in discovery due to their purported loss of *all* their text messages, the existing evidentiary record still reveals numerous genuine disputes of material fact that preclude summary judgment. The contemporaneous emails, interview transcripts and deposition testimony permit a reasonable jury to conclude that Plaintiff was harassed and singled out after disclosing his sexual orientation, denied transfer opportunities, retaliated against for protected complaints and ultimately forced to seek employment elsewhere.

Because genuine disputes of material fact permeate every claim, the Motion should be denied in its entirety.

## II. <u>STATEMENT OF FACTS</u>

### A. PLAINTIFF SUCCEEDS AS A SALES REPRESENTATIVE

On September 13, 2021, Plaintiff began work for Defendants as an Enabling Technologies Sales Representative selling highly technical FDA-regulated surgical navigation systems and developed relationships with surgeons and hospitals throughout Southern California and Hawaii. Plaintiff Decl., ¶¶ 2-3. Plaintiff was successful in his role through his final full year, achieving quota and earning

Plaintiff's Opposition to Defendants' Motion for Summary     *Quinn Thyssen v. Stryker Corporation, et al.* Case No. 2:25-cv-09075 PA- MAR

2

President's Club recognition. Plaintiff's Additional Material Facts ("AMF") 136. Plaintiff obtained advanced clinical certifications with high scores. AMF 137.

## B. PLAINTIFF DISCLOSES HIS SEXUAL ORIENTATION TO NORMAN AND TO HIS TEAM

In 2023, Plaintiff disclosed his sexual orientation to his supervisor, Ryan Norman. AMF 138. Thereafter, Norman repeatedly made derogatory comments referencing Plaintiff's sexual orientation, including using the phrase "put a fire in your ass," referring to Plaintiff as "girl" and "the gay guy" and commenting that Plaintiff was "trying to look good for the boys." Pl. Decl. ¶¶ 17-19, Exs. G, H, I and J. Bowenkamp compared Norman's team and culture as "kind of that locker room," a type of place where "there is masculinity." AMF 156.

On October 31, 2024, Plaintiff shared a Halloween photograph with members of his team of Plaintiff dressed in female attire, thereby making his sexual orientation readily apparent to his team. AMF 139.

## C. MANAGEMENT BLOCKS PLAINTIFF'S INTERNAL ADVANCEMENT

In December 2024, Plaintiff applied to internal positions to escape Norman's supervision and homophobic rhetoric. AMF 144. Plaintiff's applications triggered internal discussions among Human Resources and management. AMF 146-147. In response to one application, before Plaintiff's qualifications were considered, manager John Bowenkamp stated, "No way he will get that job." AMF 148. Plaintiff was not interviewed for the positions for which he applied. AMF 144.

On January 15, 2025, Norman instructed Plaintiff to "start looking for another job," stating manager Keith Evans wanted him out. Pl. Decl. ¶ 32.

///

///

///

| Plaintiff's Opposition to Defendants' Motion for Summary | *Quinn Thyssen v. Stryker Corporation, et al.* Case No. 2:25-cv-09075 PA- MAR |
|---|---|

## D. PLAINTIFF COMPLAINS OF UNLAWFUL CONDUCT AND DEFENDANTS RETALIATE

On February 11, 2025, Plaintiff submitted a formal written complaint to Human Resources (HR) reporting discrimination and harassment. Defendants' Statements of Undisputed Fact ("SUF") 74.

On February 25, 2025, Plaintiff reported a whistleblower complaint about what he believed to be an off-label use of a Stryker medical product. AMF 158.

On February 28, 2025, Norman delivered Plaintiff a sharply negative performance review and circulated a non-customary email to HR and senior leadership emphasizing Plaintiff's alleged deficiencies. AMF 159.

## E. PLAINTIFF ULTIMATELY LEAVES STRYKER

After unsuccessfully attempting to remain with Stryker through internal transfers, being told to "start looking for another job," receiving a sharply negative performance review, and concluding that he no longer had a realistic future with the company, Plaintiff accepted employment elsewhere and resigned. SUF 85.

## III. <u>LEGAL ARGUMENT</u>

### A. PLAINTIFF PRESENTED SUBSTANTIAL EVIDENCE OF ACTIONABLE ADVERSE EMPLOYMENT ACTIONS

In their Motion, Defendants improperly isolate each challenged employment action and argue that none is sufficiently consequential to constitute an adverse employment action. California's Fair Employment and Housing Act (Cal. Gov. Code § 12940) ("FEHA"), however, requires the Court to examine the totality of Defendants' conduct and determine whether, viewed collectively, it materially affected the terms, conditions, or privileges of Plaintiff's employment.

In *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005), the Court rejected a cramped approach to adverse employment actions and held that courts must examine the employer's conduct as a whole to determine whether it materially

Plaintiff's Opposition to Defendants' Motion for Summary | *Quinn Thyssen v. Stryker Corporation, et al.* Case No. 2:25-cv-09075 PA- MAR

4

affected the terms, conditions, or privileges of employment. There "is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries." *McRae v Dept. of Corrections & Rehabilitation*, 142 Cal App 4th 377, 388 (2006).

Here, Plaintiff's evidence reflects precisely such a progression: management blocked his efforts to escape his supervisor, initiated an escalating disciplinary process, and ultimately communicated that he should seek employment elsewhere.

In *Ray v. Henderson*, 217 F.3d 1234 (2000), the Ninth Circuit rejected the argument that only ultimate employment actions such as hiring, firing, promotion, or demotion are actionable. *Id.*, at 1242-43. Instead, the Court adopted the EEOC's broader standard, holding that an employment action is actionable if it is "reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243. In doing so, the Ninth Circuit emphasized that adverse employment actions include a wide range of employer conduct—including lateral transfers and undeserved performance evaluations, among other conduct. *Id.* at 1241-43.

Here, the evidence demonstrates far more than isolated workplace slights. After Plaintiff disclosed his sexual orientation, Defendants progressively eliminated his opportunities to remain employed at Stryker. They blocked his internal transfer requests, subjected him to an unwarranted negative performance review that initiated an escalating disciplinary process, instructed him to begin looking for another job, and ultimately left him with no reasonable belief that he had a future at the company. Viewed collectively—as *Yanowitz* requires—these actions materially affected the terms, conditions, and privileges of Plaintiff's employment.

///

///

///

---

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

### 1. The 2024 Performance Review Constitutes an Adverse Employment Action

Defendants attempt to characterize the 2024 performance review (issued on February 28, 2025) as a routine personnel action with no tangible consequences. The evidence suggests otherwise.

While a negative review is not automatically actionable, courts routinely recognize that reviews become adverse when they serve as the basis for future discipline, impair advancement opportunities, affect transfer eligibility, or place an employee on a path toward termination. *Spears v Missouri Dept. of Corrections and Human Resources*, 210 F3d 850, 854 (8th Cir 2000) ("An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.")

The review was not delivered in the ordinary course. Norman simultaneously circulated an email to Human Resources and senior leadership emphasizing Plaintiff's alleged deficiencies. (Goldstein Decl. ¶ 13, Ex. M.)  This was unusual — Bowenkamp testified that he could not recall receiving an email like this with respect to any other subordinate's review. AMF 166. A reasonable jury could conclude that Norman was not simply evaluating Plaintiff's performance but creating a written record to justify future disciplinary action.

The timing is also highly suspect. Plaintiff reported off-label promotional activity on or about February 25, 2025 – three days prior to this negative performance review and Norman's unconventional email.

Additionally, substantial evidence undermines the legitimacy of the review itself. The review criticized Plaintiff's clinical knowledge notwithstanding contemporaneous certification records demonstrating exceptional performance, including scores of 97% on the cranial examination, 91% on the spine examination and perfect scores on multiple live demonstrations. AMF 137.

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

A jury could reasonably conclude that the review was not an honest assessment of performance but a step in a larger effort to create a record supporting future disciplinary action. Under *Yanowitz,* such conduct plainly affects the terms, conditions, and privileges of employment. At minimum, these facts present classic jury questions that cannot be resolved as a matter of law.

**2. The Denial of Plaintiff's Internal Transfer Applications Constitutes an Adverse Employment Action**

Plaintiff applied for several internal positions in December 2024 (AMF 144) in an effort to remain employed at Stryker while escaping an increasingly hostile and homophobic working environment. Defendants argue that Plaintiff's rejected transfer applications cannot constitute adverse employment actions. That argument ignores both *Yanowitz* and the realities of Plaintiff's circumstances.

Internal mobility is a significant term, condition, and privilege of employment. See *Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) ("Indeed, as the Government aptly says, 'it is difficult to imagine a more fundamental term or condition of employment than the position itself.'"); *Lucido v Cravath, Swaine & Moore*, 425 F Supp 123, 128 (1977). Particularly here, internal transfer was not simply an opportunity for promotion—it was Plaintiff's only realistic means of escaping his harasser while preserving his career at Stryker.

The evidence further supports an inference that Plaintiff's candidacies were effectively doomed before any meaningful evaluation occurred, including management's statement that there was "no way" he would receive one of the positions. AMF 148.

A reasonable jury could conclude that Defendants deprived Plaintiff of the very mechanism through which he hoped to preserve his career within Stryker. That denial materially affected his advancement opportunities, future earnings, and ability to continue working in a different environment. Because reasonable jurors

| Plaintiff's Opposition to Defendants' Motion for Summary | *Quinn Thyssen v. Stryker Corporation, et al.* Case No. 2:25-cv-09075 PA- MAR |
| --- | --- |

could reach that conclusion, summary judgment on the issue of adverse employment action must be denied.

Defendants contend that Plaintiff's FEHA claims fail to the extent they rely on the rejected transfer denials due to extraterritoriality. This argument misstates both the facts and the law. As an initial matter, Defendants' argument does not apply to Plaintiff's application for the San Jose Territory Manager position, which was located in California. That transfer denial is plainly governed by FEHA.

Nor does FEHA cease to protect a California employee merely because the position sought happened to be located outside California. Plaintiff was employed by Stryker in California, applied for the positions while working in California, and suffered the consequences of Defendants' discriminatory conduct in California.

Under *Kearney v Salomon Smith Barney, Inc.,* 39 Cal 4th 95 (2006), California law is not rendered inapplicable merely because some aspects of the challenged conduct occurred outside the state; rather, an impermissible extraterritorial application exists only where no "crucial element" of the claim occurred in California. *Id.*, at 119.

The facts in the authorities cited by Defendants are materially different.

In *Gowan v. Stryker Corp.*, No. 20-cv-00339, 2021 WL 3403150 (N.D. Cal. Aug. 4, 2021), the plaintiff, a non-California resident, sought to recover under FEHA for discrimination and harassment at Stryker that occurred while she worked as a sales representative in Colorado, supervised by a Colorado manager, covering a Colorado territory, with the challenged conduct solely outside California. The district court noted that FEHA did not apply to the plaintiff's job change because "[t]he events leading up to her decision to accept the new position in California (and the decision itself) occurred outside California." *Id.*, at *8.

---

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

Likewise, in *English v. General Dynamics Mission Systems, Inc.*, 808 Fed. Appx. 529 (2020), the plaintiff's FEHA claim failed because the unlawful conduct giving rise to her FEHA claims occurred *entirely* outside California. *Id.*, at 530.

This case is different. Plaintiff was a California employee, applying to positions from California during an ongoing California employment relationship. At minimum, Defendants failed to establish as a matter of law that every "crucial element" of the challenged transfer denials occurred outside California.

### 3. Plaintiff's Resignation was Not Voluntary

Norman mocked Plaintiff's sexual orientation. Plaintiff applied for internal transfers to avoid Norman and Defendants effectively blocked these applications. Norman then told Plaintiff to "start looking for another job" as leadership wanted him out. Plaintiff complained to HR, hoping Stryker would fix the problem. When that failed, and he received the unwarranted performance review, he resigned. Defendants ignore this context and characterize Plaintiff's resignation as voluntary.

In *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (1994), the California Supreme Court explained that "[c]onstructive discharge occurs when the employer's conduct effectively forces an employee to resign," such that although the employee says "I quit," the employment relationship is "actually severed involuntarily by the employer's acts, against the employee's will." *Turner*, at 1244-45. The inquiry is an objective one: whether "a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." *Id.* at 1248. Importantly, the Court emphasized that the proper focus is "whether the resignation was coerced, not whether it was simply one rational option for the employee." *Id.* at 1247. Thus, nothing in *Turner* requires an employee to remain in an objectively intolerable workplace until he is formally terminated or unemployed before pursuing another opportunity. Rather, the question is whether Defendants intentionally created or

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

knowingly permitted working conditions that would compel a reasonable employee to resign. *Id.* at 1249-50.

Defendants repeatedly characterize Plaintiff's departure as a voluntary decision to pursue a more lucrative opportunity. The argument ignores the reasons Plaintiff looked to transition to another department in the first place – harassment by his supervisor, multiple blocked transfer attempts, remarks that leadership wanted him gone and a poor unwarranted performance review that was shared in a non-customary fashion with leadership and HR.

Defendants contend there was no triggering event that caused Plaintiff's resignation. But again, a reasonable jury could conclude otherwise based on Norman's statements only two weeks earlier that "no one likes [you]" and Evans "wanted [him] out." SUF 83.

At this stage, the Court's role is only to determine whether a reasonable jury could conclude that these actions materially affected Plaintiff's employment. On this record, it plainly could.

## B. TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIM

### 1. Ample Evidence Exists Demonstrating Discriminatory Motive

Summary judgment is particularly disfavored in employment discrimination cases because "[a]ctions for unlawful discrimination and retaliation are inherently fact-driven." *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 389 (2006). *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 286 (2009) (cases of intent and motive are rarely appropriate for disposition on summary judgment). Indeed, because discriminatory intent and pretext frequently turn on circumstantial evidence, witness credibility, and competing inferences from the record, California courts repeatedly caution that such claims are ordinarily for the jury to resolve rather than the court on summary judgment. *Id.* at 389–90; see also *Reid v. Google, Inc.*,

50 Cal. 4th 512, 541 (2010). The leading practical treatise for California federal procedure goes so far as to state that "Disputes as to the employer's motives or state of mind raise factual issues precluding summary judgment. [Citations.]."

FEHA discrimination claims are evaluated under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Reid v. Google, Inc.*, 50 Cal. 4th 512, 520 n.2 (2010); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354–56 (2000). At the prima facie stage, Plaintiff's burden is "not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once an employer articulates a purported legitimate reason, the question becomes whether the evidence, viewed as a whole, would allow a reasonable jury to conclude that the stated reasons were false, incomplete, inconsistent, or a pretext for discrimination. *Reid*, 50 Cal. 4th at 541; *Guz*, 24 Cal. 4th at 356.

Discriminatory motive is rarely proven by direct admission. It may be established through circumstantial evidence, including timing, shifting explanations, disparate treatment, inconsistent documentation, suspicious departures from ordinary practice, and comments reflecting discriminatory animus. See *Reid*, 50 Cal. 4th at 540–41.

Defendants argue that there is no evidence of discriminatory motive and that Stryker had legitimate, nondiscriminatory reasons for its actions. That argument asks the Court to draw numerous inferences in Defendants' favor, credit Defendants' explanations, and disregard contrary evidence.

It is undisputed that after Plaintiff disclosed his sexual orientation to Norman, his workplace relationship and career trajectory changed dramatically. As discussed above, Norman mocked his sexual orientation, Stryker blocked his internal transfer efforts, Norman suddenly documented Plaintiff's performance in an unusual manner, Plaintiff was told to start looking for another job, senior leadership was

---

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

discussing PIP-related action, and Plaintiff received an unwarranted negative review that contradicted objective performance evidence.

A reasonable jury could also factor in Stryker HR's views on Plaintiff's sexual orientation. During Stryker's internal investigation, its HR Director, Beth Ross, characterized Plaintiff's medical leaves of absence as having been taken "to deal with this new sexual orientation." AMF 186.

There is also ample evidence of disparate treatment. (SUF 3) There is no evidence that Norman created comparable self-documentation memoranda regarding any of the "eight to ten sales representatives" (SUF 3) that he supervised, much less separately delivered their performance reviews to HR and leadership in the manner he did with Plaintiff. A jury could thus reasonably conclude Plaintiff was singled out.

Defendants emphasize that when Plaintiff disclosed his sexual orientation, Norman did not make a derogatory comment "in that moment." That misses the point. Discrimination is not defeated merely because the initial disclosure conversation was not hostile. See *McRae*, 142 Cal. App. 4th at 386 ("There is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries.").

The relevant question is what happened after Plaintiff's disclosure of his sexual orientation. The evidence shows that, after disclosure, 1) Norman made mocking statements regarding Plaintiff's sexual orientation, 2) negative documentation began, 3) transfer opportunities were impeded, 4) performance-management discussions circulated amongst leadership, and 5) Plaintiff was pushed toward the exit. A reasonable jury could find that Plaintiff's sexual orientation was at least a substantial motivating factor in that course of conduct.

Defendants argue that the hiring managers for Plaintiff's internal applications did not know Plaintiff's sexual orientation. That argument is dubious because

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

Plaintiff's applications triggered internal communications and negative reactions among HR and leadership, including Bowenkamp's statement that there was "no way" Plaintiff would receive one of the jobs. AMF 148.

### 2. Defendants' Proffered Reasons for its Conduct are Pretextual

Pretext may be proven "by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011).

A jury could find that Defendants' reliance on the negative aspects of the 2024 performance review is pretextual for several reasons.

First, the timing is important. The 2024 review was delivered after Plaintiff's relationship with Norman had deteriorated, after Plaintiff's failed attempt to transfer internally, after Norman allegedly told Plaintiff to "start looking for another job," and while management was discussing an Expectations Letter or PIP.

Defendants rely heavily on Plaintiff's earlier performance reviews to argue that the 2024 review merely repeated prior themes. But logically, prior feedback about polish, listening, or collaboration does not prove that a later negative review was honestly motivated. The essential question is whether the 2024 review was a fair and honest assessment or whether it became a vehicle to formalize a predetermined adverse outcome. A reasonable jury could conclude that Defendants seized on prior vague developmental themes and repackaged them as justification for a harsher employment outcome.

Second, the 2024 review was inconsistent. It criticized Plaintiff's clinical knowledge even though Stryker's own certification records showed strong objective performance, including quota achievement, President's Club recognition, major account work, successful certifications, high written exam scores and perfect

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

scores on multiple live demonstrations. AMF 136-137. Moreover, the review was inconsistent in and of itself. Stryker defines its "Developing Performance" rating that it assigned Plaintiff as "met most of [Stryker's] objectives," "achieved several outcomes that had a positive impact," and is "trending in a positive direction" and "on track to deliver solid results" — a far cry from Norman's comments in that 2024 review that Plaintiff has "strained relationships," a "lack of clinical/technical skills," an "overall experience in working with Quinn which is negatively impacting sales growth," "difficult to work," and that customers "do not trust his ability to execute." (Plaintiff Decl., ¶ 41, Ex. P)

Third, the 2024 review must be considered alongside Norman's unusual self-documentation. Norman began creating self-documentation emails regarding Plaintiff in late 2024, after years of supervising Plaintiff without comparable self-documentation. AMF 143. Norman even sent himself an email regarding Plaintiff seconds after midnight on New Years' Eve. (Goldstein Decl. ¶ 6, Ex. F, at page 4 .) A jury could infer that Norman was building a paper trail to justify adverse action rather than neutrally documenting legitimate performance concerns.

Defendants also offer post hoc explanations for its denials of Plaintiff's transfer applications involving geography, qualifications, timing, and Neurovascular experience. But the contemporaneous evidence shows that leadership reacted negatively to Plaintiff's applications before any meaningful process occurred. In fact, Bowenkamp testified that he did not interview Plaintiff, did not speak with the hiring manager, did not review Quinn's resume to determine if he was qualified and lacked knowledge whether Plaintiff would relocate to where the job was located, yet he had quickly remarked "No way he will get that job." AMF 148. A reasonable jury could conclude that Plaintiff's candidacy had effectively been decided before the hiring process occurred.

Plaintiff's Opposition to Defendants' Motion    *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                     Case No. 2:25-cv-09075 PA- MAR

14

Defendants now rely on testimony from hiring managers that they were unaware of Plaintiff's sexual orientation or that certain positions had already been filled. Plaintiff is entitled to challenge the credibility, timing, and factual accuracy of those litigation explanations, particularly where the contemporaneous emails reflect that leadership had already predetermined Plaintiff would not receive the positions.

Standing alone, any one of these circumstances might be susceptible to an innocent explanation. Together, however, they present a markedly different picture. Plaintiff has identified suspicious timing, inconsistent performance evidence, unusual documentation practices, contemporaneous emails suggesting his transfer applications were prejudged, and comments tied to his sexual orientation. A reasonable jury could conclude Defendants' stated reasons were not their true reasons.

Significantly, Defendants' assertion that the record contains no evidence of discriminatory motive is undermined by the fact that their two principal witnesses, Norman and Bowenkamp, were unable to produce any of their text message communications from the relevant period, including communications concerning Plaintiff. AMFs 196 and 197. The absence of those contemporaneous communications further demonstrates why summary judgment is inappropriate and why the competing narratives must be resolved by a jury.

Lastly, Defendants argue there was no discharge, but that they merely accepted Plaintiff's voluntary departure. That argument ignores the hostile work environment, the rejection of his internal transfer applications and Norman's instruction that Plaintiff should start looking for another job. Plaintiff's decision to seek and accept alternative employment was thus a product of his intolerable working conditions and Defendants' blatant motivation to manage him out.

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

At minimum, competing inferences may reasonably be drawn from this record, and summary judgment on Plaintiff's discrimination claim must be denied.

### C. TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S FEHA RETALIATION CLAIM

To establish a prima facie retaliation claim under FEHA (Cal. Gov. Code § 12940), Plaintiff need only show that (1) he engaged in protected activity, (2) Defendants subjected him to an adverse employment action, and (3) a causal connection exists between the two. *Yanowitz, supra*, 36 Cal. 4th at 1042. Once the employer articulates a legitimate, non-retaliatory reason for its conduct, the burden shifts back to Plaintiff to demonstrate that the proffered reasons are pretextual. *Id.* at 1042-43. Because retaliation claims almost invariably turn on motive and competing factual inferences, summary judgment is appropriate only where the evidence permits but one conclusion. *McRae, supra*, 142 Cal. App. at 389-90. At the summary judgment stage, the Court must draw all reasonable inferences in Plaintiff's favor.

### 1. Plaintiff's February 11 HR Complaint Constituted Protected Activity

It is undisputed that Plaintiff engaged in protected activity when, on February 11, 2025, he submitted a formal complaint to Human Resources reporting that he believed Norman had discriminated against and harassed him because of his sexual orientation. SUF 74. The central questions are thus whether Defendants materially altered Plaintiff's employment afterward and whether a reasonable jury could infer those actions were retaliatory. On this record, the answer to both questions is yes.

### 2. Following Plaintiff's February 11 Complaint, Defendants Escalated Their Performance Management Efforts

Just two and a half weeks after Plaintiff submitted his February 11, 2025, HR complaint, Norman delivered Plaintiff a sharply negative performance review that Plaintiff understood would become the foundation for further discipline. Norman

---

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

16

criticized Plaintiff's clinical knowledge and overall performance despite Stryker's own records reflecting Plaintiff's objective accomplishments, including strong clinical certification scores, successful completion of advanced training, and achievement of his 2024 quota. A jury could reasonably conclude that the review did not accurately reflect Plaintiff's performance but instead served as a predicate for further discipline, including the contemplated Expectations Letter and potential PIP.

Equally significant is what occurred immediately after the review. On the evening of February 28, Norman sent an unsolicited email directly to HR and Bowenkamp summarizing Plaintiff's alleged deficiencies before pasting substantial portions of the review into the email. Notably, Bowenkamp testified that he does not recall ever receiving such an email containing a snippet of one's performance review along with commentary for any other employee. AMF 166. The unusual nature of this communication is itself evidence from which a jury could infer retaliatory motive.

### 3. The Timing and Circumstances of the Adverse Actions Create a Strong Inference of Retaliation

Timing can properly be considered as circumstantial evidence of retaliatory intent, particularly when adverse conduct takes place shortly after a plaintiff engages in protected conduct. *Watson v Rozum*, 834 F3d 417, 424 (2016); *Quiroz v. Horel*, 85 F.Supp.3d 1115 (2015); *Hill v. Rhude*, 556 F.Supp.3d 1144 (2021). The Ninth Circuit has recognized that suspect timing of adverse conduct soon after protected conduct, combined with statements by defendants and evidence of pretext, creates a triable issue of fact concerning retaliatory motive. *Bruce v. Ylst*, 351 F.3d 1283, 1288-1289 (2003).

The temporal proximity alone is compelling. Plaintiff engaged in protected activity on February 11, 2025. Seventeen days later, Norman issued an unwarranted

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

17

negative performance review and elevated the matter to HR and to Bowenkamp through an unusual standalone email.

Deviations from an employer's policies and procedures are also circumstantial evidence of retaliatory intent in employment discrimination cases. *Su v. United States Postal Service*, 733 F.Supp.3d 983, 995 (2024). The Ninth Circuit has recognized that evidence of pretext — including documentation and statements made after protected activity — combined with suspect timing creates a triable issue of fact on retaliatory motive. *Bruce, supra,* 351 F.3d at 1288-89.

Defendants argue that the February 28 email was simply part of the ordinary review process. The evidence, however, permits a different inference. Bowenkamp testified that managers normally discussed performance reviews during staffing meetings and that he reviewed the evaluations themselves as part of the ordinary approval process, *i.e.*, Norman's email to him was unnecessary. Bowenkamp testified that he could not recall Norman ever sending him a separate email previewing or highlighting another employee's performance review in this fashion. AMF 166. A reasonable jury could view this unusual communication as an effort to reinforce Plaintiff's disciplinary record immediately after Plaintiff complained of discrimination.

The close temporal proximity, the unusual handling of Plaintiff's performance review, Norman's unusual standalone email to HR and senior leadership, and the evidence undermining Defendants' stated reasons together create precisely the type of factual dispute that must be resolved by a jury rather than on summary judgment.

///

///

///

Plaintiff's Opposition to Defendants' Motion
for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

18

## D. TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S WHISTLEBLOWER RETALIATION CLAIM

A Labor Code section 1102.5 claim places the burden squarely on Defendants once Plaintiff demonstrates his protected disclosure contributed to the challenged action. Labor Code section 1102.6 establishes a burden-shifting framework materially different from the traditional *McDonnell Douglas* analysis. Once a plaintiff demonstrates by a preponderance of the evidence that protected whistleblowing activity was a contributing factor in the challenged employment action, the burden shifts to the employer to prove by ***clear and convincing evidence*** that it would have taken the same action for legitimate, independent reasons. *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 712 (2022). On summary judgment, the employer bears a particularly heavy burden because all reasonable inferences must be drawn in Plaintiff's favor.

Section 1102.5 protects employees who reasonably believe the reported conduct violates a statute, rule, or regulation, even if the employer later disputes whether an actual violation occurred. Plaintiff's report of off-label use of Stryker's product to Alex Sellers was precisely the type of disclosure section 1102.5 seeks to encourage.

Plaintiff had successfully completed Stryker's clinical certification program, sold FDA-regulated medical devices for years, and was familiar with Stryker's written policies prohibiting off-label promotion. A reasonable jury could therefore conclude Plaintiff believed that his report of off-label promotion of medical devices was reasonable.

Defendants argue that Norman and Bowenkamp allegedly lacked knowledge of Plaintiff's report. (Motion, at 22:13-15.) Even accepting that premise, the evidence permits a reasonable inference that information regarding Plaintiff's complaints flowed through Stryker's management and compliance channels.

Plaintiff's Opposition to Defendants' Motion          *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                              Case No. 2:25-cv-09075 PA- MAR

19

Moreover, Plaintiff need only establish that his whistleblowing was a contributing factor in the challenged employment actions — not the sole motivating factor. *Lawson*, 12 Cal. 5th at 712.

Defendants next attempt to minimize Plaintiff's whistleblowing report by emphasizing that Plaintiff did not reduce them to writing until his resignation email. (Motion, at 22:15-16.)  That argument misunderstands the statute. Section 1102.5 protects oral as well as written disclosures. Plaintiff's testimony alone is sufficient to create a triable issue regarding the existence and timing of those complaints.

Plaintiff has presented substantial evidence that following his protected complaints, Defendants escalated their efforts to document alleged performance deficiencies, issued a materially negative performance review despite Plaintiff's objective achievements, contemplated formal discipline, and continued obstructing his career advancement. A reasonable jury could conclude that Plaintiff's whistleblowing contributed to those actions.

Even assuming Plaintiff establishes only a minimal showing of causation, Defendants still bear the burden of proving by ***clear and convincing evidence*** that they would have taken the same actions absent Plaintiff's whistleblowing. As such, they face an especially demanding burden at summary judgment, where all reasonable inferences must be drawn in Plaintiff's favor.

Defendants cannot satisfy their burden by simply repeating the same disputed performance criticisms that Plaintiff has already shown are subject to genuine factual dispute. The evidence regarding Plaintiff's qualifications, certifications, sales success, transfer denials, unusual documentation, and performance review is sharply contested. At summary judgment, where every reasonable inference must be drawn in Plaintiff's favor, Defendants' reliance upon disputed testimony and competing interpretations of the evidence falls well short of the demanding clear-and-convincing standard imposed by Section 1102.6.

| | |
|---|---|
| Plaintiff's Opposition to Defendants' Motion for Summary | *Quinn Thyssen v. Stryker Corporation, et al.* Case No. 2:25-cv-09075 PA- MAR |

## E.  TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S FEHA HARASSMENT CLAIM

During a performance review, when Norman was purportedly trying to motivate Plaintiff, Norman told Plaintiff that he did not want to use the expression "put a fire in your ass considering you being gay and all." (Goldstein Decl., ¶ 1, Ex. A at 70:22-71:4; Pl. Decl. ¶ 17, Ex. G). A reasonable jury could interpret the remark as mocking Plaintiff based on stereotypes associated with his sexual orientation. Norman also often referred to him as "girl" and once referred to him as "the gay guy." (Goldstein Decl., ¶ 1, Ex. A, at 71:7-19; Pl. Decl. ¶¶ 18-19, Exs. H and I). Notably, Bowenkamp compared Norman's team and culture as "kind of that locker room," a setting where "there is masculinity." AMF 156.

The Court is not supposed to decide whether this conduct was severe or pervasive. A jury is.  Defendants' argument asks the Court to do precisely what the Legislature has instructed courts not to do—resolve a fact-intensive hostile work environment claim on summary judgment. FEHA harassment claims are uniquely dependent upon context, credibility, and the totality of the circumstances.

Significantly, California courts recognize that even "a single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." Cal. Gov. Code §12923(b).

Moreover, the California Legislature has expressly affirmed that harassment claims are "rarely appropriate for disposition on summary judgment." Cal. Gov. Code §12923(e), affirming *Nazir v. United Airlines, Inc.,* 178 Cal.App.4th 243 (2009). Further, the Legislature clarified that "hostile working environment cases involve issues 'not determinable on paper.' " Cal. Gov. Code §12923(e).

Plaintiff's Opposition to Defendants' Motion for Summary                    *Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

21

While Plaintiff only needs to prove that Norman's conduct was either severe or pervasive, a reasonable jury could conclude that both standards are met. A reasonable jury could deem the annual review remark especially severe given the graphic sexual wordplay together with the power dynamic at play. The comments did not come from a coworker; they came from Plaintiff's direct supervisor, the individual responsible for evaluating Plaintiff's performance, determining his career advancement, and exercising authority over his day-to-day employment. That context magnifies the humiliating and intimidating nature of the remark. A reasonable jury could also deem the repeated, public, sexual-orientation ridicule by Norman – including the public taunts at the golf event and at the team dinner – as pervasive.

Defendants attempt to diminish the impact of Norman's remarks by arguing that a "handful" of remarks over four months is not severe. California law does not impose a numeric threshold and requires a holistic, context-driven assessment including the remark made, the setting in which the remark was made, and the impact the remark had on the Plaintiff – all inquiries for the jury.

At minimum, the competing accounts between Plaintiff and Defendants, as well as any credibility disputes about what was said and how often preclude summary adjudication because hostile environment determinations turn on factual inferences for the jury. *Nazir supra,* 178 Cal. 4th at 331-332.

Viewed collectively, a reasonable jury could conclude Norman created an intimidating, hostile, or offensive work environment because of Plaintiff's sexual orientation.

## F. PLAINTIFF WITHDRAWS HIS FAILURE TO PREVENT CLAIM

After more extensive discovery and review of the entire evidentiary record, it appears that all discriminatory and harassing actions were taken prior to Plaintiff's

Plaintiff's Opposition to Defendants' Motion
for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

February 11, 2025, protected complaint. Plaintiff contends that the February 28, 2025, performance review was a retaliatory act, not a discriminatory or harassing act. Accordingly, Plaintiff withdraws his failure-to-prevent claim.

### G. TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM

Constructive discharge[1] occurs when an employer's conduct effectively forces an employee to resign because working conditions become so intolerable that a reasonable person in the employee's position would have no reasonable alternative but to quit. *Turner, supra*, 876 P.2d at 1025-1026. The determination as to whether or not working conditions are so intolerable so as to cause a reasonable person to quit is objective and turns on an analysis that weighs the totality of the circumstances, including the employer's knowledge or the foreseeability of the resignation and whether the conditions caused the resignation. *Id.*, at 1026.

A reasonable jury could find that Plaintiff's working conditions became objectively intolerable after he disclosed his sexual orientation, had his internal applications blocked, told to find a job elsewhere and then receive a negative performance review shortly after a protected complaint, and that those conditions caused his resignation. See discussion in Section III.A.3, supra.

Plaintiff's efforts to remain professional and cordial with his supervisor and to salvage his job do not negate constructive discharge. Employees often attempt to preserve professional relationships even while believing their employment is ending. A reasonable jury could conclude Plaintiff thanked Norman for his past mentorship while simultaneously believing, based on Norman's own statements, that Stryker no longer intended to retain him.

---

[1] Plaintiff entitled this claim as "Wrongful Constructive Discharge in Violation of Public Policy" in the caption page of his Complaint; he correctly named the claim "Constructive Discharge" in the legal section and properly identified that claim's elements.

| | |
|---|---|
| Plaintiff's Opposition to Defendants' Motion for Summary | *Quinn Thyssen v. Stryker Corporation, et al.* Case No. 2:25-cv-09075 PA- MAR |

Viewing the evidence collectively rather than in isolation, a reasonable jury could conclude that Plaintiff exhausted every reasonable effort to remain employed at Stryker before ultimately accepting outside employment. Plaintiff first sought internal transfers, reported discrimination and reported what he believed to be compliance violations. Only after management communicated that it wanted him out, and after Plaintiff was placed on an escalating path toward discipline did he conclude that he had no realistic future with the company. Whether those circumstances would compel a reasonable employee to resign presents a classic jury question that cannot be resolved on summary judgment.

## H. PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES IS VIABLE

As substantial evidence supports findings of discrimination, retaliation, harassment, and intentional misconduct by a managing agent, Defendants are not entitled to summary adjudication of Plaintiff's punitive damages request.

Norman oversaw the Western U.S. team across fourteen states, managed many employees, set team culture and strategy, directly supervised Plaintiff, and annually reviewed Plaintiff's performance. (Goldstein Decl. ¶ 2, Ex. B, at 24:19-25:2). Norman was also responsible for disciplining employees and for recommending, drafting and discussing certain warnings and disciplinary actions with his direct reports including expectation letters and performance improvement plans. (Goldstein Decl., ¶ 2, Ex. B, at 51:6-11). Accordingly, a genuine issue of fact exists as to whether or not Norman's function at Stryker rose to the level of an "officer, director or managing agent." Defendants argue that "Thyssen cannot identify any officer, director, or managing agent with authority to establish or change corporate policy, let alone one who acted with an unlawful animus toward him." Motion, at 25:24-28. Not so. Aside from Norman, Plaintiff identifies Bowenkamp, Evans and Ross.

Plaintiff's Opposition to Defendants' Motion for Summary

*Quinn Thyssen v. Stryker Corporation, et al.*
Case No. 2:25-cv-09075 PA- MAR

A triable issue also exists as to whether or not Norman acted with malice when he made sexual-orientation-based comments. And lastly, a genuine issue of fact exists as to whether or not Defendants acted with malice when Defendants denied job opportunities to Plaintiff without consideration of his qualifications, effectively relegating him to continue working directly under his alleged harasser.

As such, punitive damages are an appropriate consideration for the jury.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

Dated: July 06, 2026                    Respectfully Submitted,

                                        /s/ Alan Goldstein
                                        Arick Fudali, Esq.
                                        Alan Goldstein, Esq.
                                        Mary Fitilchyan, Esq.
                                        THE BLOOM FIRM
                                        Attorneys for Plaintiff

Plaintiff's Opposition to Defendants' Motion          *Quinn Thyssen v. Stryker Corporation, et al.*
for Summary                                           Case No. 2:25-cv-09075 PA- MAR